IN THE UNITED STATES DISTRICT COURT
<u>FOR THE DISTRICT OF MARYLAND</u>
*Southern Division*

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| **v.** | * | **Case No. 17-cr-0315-PWG** |
| **KEISHA FINDLEY** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

<u>**MEMORANDUM OPINION AND ORDER**</u>

This Memorandum Opinion and Order addresses Defendant Keisha Findley's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), ECF No. 39. On May 1, 2018, Ms. Findley was sentenced to a 48-month term of imprisonment after pleading guilty to wire fraud, in violation of 18 U.S.C. § 1343, and aggravated identity theft, in violation of 18 U.S.C. § 1028A. Judgment, ECF No. 21. Ms. Findley had been serving her sentence at FPC Alderson prior to the Bureau of Prisons ("BOP") transferring her to home confinement under their expanded CARES Act authority.[1] Sup. Mot. 1, ECF No. 45. She has served approximately 29 months, which is about 60% of her sentence. Mot. Mem 2, ECF No. 43. Her projected release date is January 27, 2022. *Id.* Ms. Findley, 44 years old, suffers from, among other medical conditions, hypertension and obesity.[2] *Id.* at 1, 10. She seeks a reduction of her sentence to time served. *Id.* at 1.[3] The Government opposes her motion on the grounds that release would not align with the sentencing

---

[1] Normally, the BOP is limited to committing an inmate to a term of home confinement for the "shorter of 10 percent of the term of imprisonment . . . or 6 months." 18 U.S.C. 3624(c)(2). However, under the CARES Act, the BOP Director "may lengthen the maximum amount of time for which . . . to place a prisoner in home confinement." *See* Coronavirus Aid, Relief, and Economic Security Act, Pub. L. 116-136, § 12003, 134 Stat. 281 (2020).

[2] Ms. Findley also suffers from uterine fibroids and hypothyroidism but does not posit that these conditions place her at an increased risk of contracting a severe case of COVID-19.

[3] Although on home confinement, Ms. Findley remains within the BOP's legal custody and is subject to being returned to a prison facility. *See* Sup. Mot. 1-3; 18 U.S.C. § 3624(c)(2).

factors articulated in 18 U.S.C. §3553(a). I have reviewed all the materials[4] and find a hearing unnecessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons discussed below, Ms. Findley's motion is granted in part. As a condition of supervised release, I will order that Ms. Findley remain on home confinement. Additionally, Ms. Findley is to remain under the supervision of RRM Baltimore.

**BACKGROUND**

From approximately May 2014 through December 2015, Ms. Findley executed a scheme to defraud her employer. Stip. Facts, Plea Agreement, ECF No. 5. On March 31, 2017, Ms. Findley pleaded guilty to wire fraud and aggravated identify theft. Plea Agreement, ECF No. 5. On May 1, 2018, she was sentenced to 24 months on the wire fraud charge and 24 months on the aggravated identity theft charge. *See* Judgment. Ms. Findley was also ordered to pay $333,779.53 in restitution. *Id.* The BOP currently lists Ms. Findley's release date as January 27, 2022. *See* Bureau of Prisons Inmate Locator for Keisha Findley, Register Number: 63994-037, *available at* https://www.bop.gov/inmateloc/).

The Government does not contest that the conditions inside of FPC Alderson present an increased risk for the spread of COVID-19. Currently, FPC Alderson reports that one inmate and one staff member are infected with COVID-19, while 11 inmates and 16 staff members have recovered from the virus. *See* https://www.bop.gov/coronavirus/ (last visited January 19, 2021). While these numbers are relatively low, Ms. Findley, in her correspondence to this Court, articulated that the housing conditions at FPC Alderson make the facility especially vulnerable to a severe COVID-19 outbreak. Letter to Court, Ex. 8, ECF No. 43. Ms. Findley reported that she

---

[4] The motion is fully briefed. *See* ECF Nos. 43, 45, 48, and 50.

2

was housed in a "dormitory style unit with over 100 other women." *Id.* This setup makes social distancing "impossible." *Id.*

As stated in her motion, and corroborated in her medical records, Ms. Findley suffers from hypertension and has a body mass index ("BMI") between 40.0-44.9, placing her in the obese range. Medical Records, Ex. 5, ECF No. 43. Hypertension is a comorbidity that increases the risk of severe illness should someone who has it contract COVID-19. *See e.g.,* https://www.covid19treatmentguidelines.nih.gov/overview/ (last visited January 19, 2021). Further, Ms. Findley posits that her risk of a severe COVID-19 case is multiplied as a result of her obesity. Mot. Mem. 3-5.

On May 5, 2020, Ms. Findley filed a request for compassionate release with the warden of FPC Alderson. Ex. 1, ECF No. 43. The request was denied on May 12, 2020. Ex. 2, ECF No. 43. Ms. Findley appealed the denial on June 9, 2020 but has not received a response. Ex. 3, ECF No. 43. In their brief, the Government does not contest that Ms. Findley has exhausted her administrative remedies.

## DISCUSSION

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020). However, there is an exception when modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B). Here, Ms. Findley requests a modification of her sentence for "compassionate release" under the First Step Act, as amended.[5] The First Step Act permits a defendant to petition

---

[5] The "compassionate release" provision of the 1984 First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A)(i), permitted a court to alter a sentence only upon a motion by the Director of the Bureau of Prisons ("BOP"). In 2018 Congress amended the compassionate release mechanism when it enacted the First Step Act of 2018. *See* Pub. L. 115-391, 132 Stat. 5239 (2018). As amended, the compassionate release provision allows the court to act on a motion for compassionate release filed by a defendant.

3

a federal court directly after exhausting all administrative rights whenever "extraordinary and compelling reasons" warrant a reduction in sentence. 18 U.S.C. § 3582(c)(1)(A)(i). Under the statute, I must do the following: (1) determine whether the petitioner has fully exhausted all administrative remedies or 30 days have passed since the BOP received the request; (2) determine whether "extraordinary and compelling reasons" warrant a sentence reduction that is "consistent" with applicable policy statements issued by the Sentencing Commission; and (3) consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent that they are applicable." *Id.*

### I. Administrative Exhaustion

A court may only consider a prisoner's motion for compassionate release if the prisoner has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or if 30 days have passed since the warden of a defendant's facility received such a request. 18 U.S.C. § 3582(c)(1)(A). This condition is satisfied. As mentioned above, the Government does contest that the Court has authority to rule on this motion.

### II. Extraordinary and Compelling Reasons

Second, I must determine whether "extraordinary and compelling reasons" warrant a sentence reduction and that such a reduction is "consistent" with Sentencing Commission statements. 18 U.S.C. § 3582(c)(1)(A). I join with the majority of courts finding that 18 U.S.C. § 3582(c)(1)(A)(i) as amended grants courts with independent discretion to decide whether there are "extraordinary and compelling reasons" to modify a sentence and does not require that a court defer to the Sentencing Commission's policy statements regarding this question. *See United States v. Wise*, ELH-18-72, 2020 WL 2614816, at *7-9 (D. Md. May 22, 2020) (holding the same and collecting cases). As the Fourth Circuit observed, district courts have discretion to independently assess whether circumstances meet the extraordinary and compelling threshold. *United States v.*

*McCoy*, 981 F.3d 271, 281-82 (4th Cir. 2020). More specifically, "district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (citing *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020). However, while not binding, *id.*, the Sentencing Commission's policy statements may provide useful guidance.

The Sentencing Commission's policy statements in U.S.S.G. § 1B1.13 offer guidance here. Section 1B1.13 recites the language of 18 U.S.C. § 3582(c)(1)(A) before it was amended in 2018, including the statement that "the defendant is not a danger to the safety of any other person or to the community." The commentary to the policy statement provides four examples of what constitutes "extraordinary and compelling reasons" for a sentence reduction: (1) medical condition of the defendant; (2) age of the defendant; (3) family circumstances; and (4) a catch-all "other reasons." U.S.S.G. § 1B1.13 app. note 1(A)–(C).

Judges in this court have found that the standard of extraordinary and compelling reasons was met during the COVID-19 pandemic where a defendant had serious medical problems that placed them at high risk for complications if they contracted COVID-19. *See, e.g.*, *United States v. Jennings*, Case No.: 13-cr-46-PWG, 2020 WL 4748462, at *4 (D. Md. Aug. 17, 2020) (citing cases in this court and others and the application of multiple conditions). Certainly, the situation regarding COVID-19 is rapidly evolving, and new information about the virus and risk factors must be taken into account, as well as the changing conditions at prison facilities, for better or worse.

As Ms. Findley's motion states, data backs up the assertion that hypertension and obesity increase the likelihood of a severe COVID-19 case. Mot. Mem. 3-6. Hypertension alone has qualified as an extraordinary and compelling circumstance sufficient to justify compassionate release. *E.g., United States v. Benning*, No. 16-cr-0527-PWG, 2020 WL 7054823, at *2 (D. Md.

5

Dec. 2, 2020). Further, courts in this district have found that the combination of hypertension and obesity constitute extraordinary and compelling reasons warranting compassionate release. *See United States v. Hardy*, CA No. ELH-11-358, 2020 WL 4436376, at *6 (D. Md. August 3, 2020) (finding that "[n]umerous courts have found that, in light of the COVID-19 pandemic, chronic medical conditions, including obesity and hypertension, qualify as a compelling reason for compassionate release.");*United States v. Cuevas*, No. GJH-16-451, No. GJH-17-473, 2020 WL 4436380, at *5 (D. Md. August 3, 2020) (noting that the Defendant's "age along with his additional medical conditions, particularly hypertension and obesity, place him at higher risk for severe illness" resulting from COVID-19).

Lending credibility to the proposition that Ms. Findley's medical conditions constitute "extraordinary and compelling" reasons is the BOP's voluntary decision to transfer Ms. Findley from FPC Alderson to home confinement. Supp. Mot. 1. This transfer avoids increasing the severity of the "sentence beyond what was originally intended." *United States v. Mel*, No. TDC-18-0571, 2020 WL 2041674, at * 3 (D. Md. April 28, 2020). Ms. Findley's medical conditions, paired with the inability to practice social distancing within FPC Alderson, constitute extraordinary and compelling reasons warranting a sentencing reduction. These concerns are further considered in the analysis of the sentencing factors.

**III.    Sentencing Factors**

A finding of "compelling and extraordinary reasons" is a necessary, not sufficient, condition for compassionate release. This Court must also consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Those factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the need for the sentence imposed;" (3) "the kinds of sentences available;" (4) the

sentencing guideline ranges; (5) "any pertinent policy statement;" (6) "the need to avoid unwarranted sentence disparities among defendants with similar records;" and (7) "the need to provide restitution to the victims of the offense."

There is no question that Ms. Findley's conduct was serious. To that end, the primary victim in her case recently outlined the far-reaching consequences that Ms. Findley's actions have had on her, her business, and her family. *See* Gov. Resp. 2, ECF No. 48. However, Ms. Findley has served approximately 29 months of her 48-month sentence. Mot. Mem. 2. In an August 2020 Pattern Risk Assessment, Ms. Findley received a minimal score (1 general, -3 violent). Ex. 9, ECF No. 43. Since being incarcerated, Ms. Findley has completed various educational classes and rehabilitative programs. Reply 2, ECF No. 50. Ms. Findley was also employed as an orderly in the prison's business office. Mot. Mem. 10. Further, Ms. Findley has no documented incident reports in the last six months of her incarceration. *See* Ex. 11, ECF No. 43.

When considering the need for this particular sentence and the types of available sentences, the main concern is public safety. Here, Ms. Findley committed a serious but non-violent white-collar offense. Releasing Ms. Findley to a term of home confinement will protect the community while avoiding the risk that she is exposed to COVID-19 inside of FPC Alderson. Ms. Finley has the support of many family members and friends, as highlighted by the numerous letters this Court received on her behalf. *See* Ex. 10, ECF No. 43. Further, home confinement will allow Ms. Findley to apply the skills she learned while incarcerated and will empower her to develop a plan to begin paying the restitution this Court has ordered. *See* Judgment. As previously mentioned, these considerations are underscored by the fact that the BOP voluntarily released Ms. Findley to home confinement.

Considering all of the circumstances, I find that modifying the sentence at this time would be consistent with the sentencing factors set forth in § 3553(a)—Ms. Findley will continue to be confined in her home for an additional period of fifteen months as a condition of her supervised release, thus reflecting the seriousness of the offense, promoting respect for the law, and providing just punishment. § 3553(a)(2)(A).

## CONCLUSION

The Court recognizes the seriousness of the COVID-19 pandemic and the risks that Ms. Findley faces based on her medical conditions and location. I find that she has exhausted administrative remedies, shown extraordinary and compelling reasons for a sentence modification, and demonstrated that the applicable sentencing factors justify such a modification. Therefore, Ms. Findley's motion for compassionate release is granted in part. Ms. Findley is to serve the remainder of her sentence under home confinement.  As a result of this decision, Ms. Findley's February 2020 request regarding placement in a Residential Reentry Center, ECF No. 37, is moot.

## ORDER

For the reasons stated in this Memorandum Opinion and Order, it is this 29th day of January 2021, hereby ORDERED that Ms. Findley's Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), ECF No. 39, is GRANTED IN PART and DENIED IN PART. Ms. Findley is to remain on home confinement under the supervision of RRM Baltimore for fifteen months as a condition of supervised release. All other conditions of Ms. Findley's sentence, including restitution, remain in effect.  The Motion Regarding Residential Reentry Center, ECF No. 37, is DENIED AS MOOT.

                                                        /S/
                                       Paul W. Grimm
                                       United States District Judge